IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 06-cv-01111-PSF-PAC

STEVE SILVER; and
JANICE SILVER,

    Plaintiffs,

v.

RADIANCE MEDSPA FRANCHISE GROUP, PLLC,
an Arizona Professional Limited Liability Company,

    Defendant.

---

**ORDER ON DEFENDANT'S MOTION TO DISMISS OR
ALTERNATIVELY TO STAY OR TRANSFER**

---

This matter is before the Court on Defendant's Motion to Dismiss or Alternatively to Stay or Transfer (Dkt. # 6) filed June 19, 2006. Plaintiffs filed their response on July 10, 2006 (Dkt. # 11). Defendant filed a reply on July 25, 2006 (Dkt. # 14). Plaintiffs filed their surreply on August 16, 2006 (Dkt. # 20). The matter is ripe for determination. The Court has determined that oral argument is not necessary.

**I. BACKGROUND**

Plaintiffs' complaint, filed in Arapahoe County District Court on May 11, 2006 alleges that Defendant Radiance Medspa Franchise Group, PLLC ("Radiance") is an Arizona professional limited liability company doing business in Arapahoe County, Colorado but with a principal place of business in Scottsdale, Arizona. (Complaint ¶ 2). Radiance asserts that it is in the business of franchising retail outlets that provide

medical treatments in a spa-like environment. Plaintiffs allege that in January and February 2006 they were looking for a business opportunity and began discussions with Radiance about the possibility of opening a franchise in Denver, Colorado (*id.,* ¶¶ 6, 8). The complaint alleges the details of the negotiations in numerous paragraphs, but for purposes of this Order it is sufficient to note the following events alleged in the complaint.

On March 9, 2006, plaintiffs and defendant signed a Letter Agreement that essentially provided that the parties were evaluating the terms of a "Franchise Agreement," and that the parties "desire[d] to confirm their intentions to do business with each other even though the Franchisee [plaintiffs] has not had an opportunity to discuss its comments on the Franchise Agreement with the Franchisor and its counsel." (Exhibit A to Complaint, Letter Agreement at 1). The Letter Agreement also provides that the Franchisee has delivered and the Franchisor acknowledges receipt of $80,000, which represents the Franchise Fee (*id.*).

As alleged in the complaint, the Letter Agreement also gave plaintiffs the right to rescind the Letter Agreement within 45 days if: a) the Franchisor does not agree to the changes Franchisee requests with respect to the Franchise Agreement or the "yet finalized" Addendum to the Franchise Agreement, or b) the Franchisee is not able to obtain approval for reasonable financing from independent third party lenders on terms acceptable to Franchisee (Complaint, ¶¶ 22-23).

As further alleged in the complaint, on March 10, 2006 the plaintiffs paid the $80,000 franchise fee to defendant via wire transfer (*id.,* ¶ 24). The complaint also

alleges that on March 21, 2006 the plaintiffs signed, albeit under what they assert was pressure from the defendant, the "franchise documents," which the Court understands to be at least the Franchise Agreement referenced in the Letter Agreement (*id.,* ¶ 25). The Franchise Agreement (attached as Exhibit A to Defendant's Motion) contains an arbitration clause, as further discussed below.

The complaint further alleges that by letter dated March 29, 2006, the plaintiffs timely exercised their right of rescission and demanded a full refund of the $80,000 payment (*id.* at ¶ 29), although the complaint does not expressly state the reason given for the exercise of the right of rescission, the letter attached to plaintiffs' response states the reason is inability to obtain reasonable financing from independent lenders (Exhibit O to Plaintiffs' Response). Plaintiffs allege that defendant has refused to refund the money despite repeated demands (*id.* at ¶ 30).

Plaintiffs' complaint alleges four claims for relief: 1) violation of Colorado Deceptive Trade Practices Act; conversion; civil theft pursuant to C.R.S. § 18-4-405 and breach of contract. On June 12, 2006, defendant removed this action to this Court on the basis of diversity jurisdiction. On June 19, 2006, defendant filed its motion to dismiss or alternatively to stay or transfer (Dkt. # 6), with an accompanying brief (Dkt. # 7).

## II. DEFENDANT'S MOTION

Defendant filed its Motion to Dismiss or Alternatively to Stay or Transfer, citing to Rule 12(b)(3) of F.R.Civ.P., which provides for dismissal for improper venue. However, the essence of defendant's argument is that the arbitration clause in the Franchise

Agreement controls this dispute and directs that the matter be submitted to arbitration before the American Arbitration Association in Phoenix, Arizona (Brief in Support of Motion at 3-6). As defendant correctly states, and plaintiffs do not dispute, the Franchise Agreement contains an arbitration clause that provides in pertinent part that the "[t]he parties agree to submit any claim or dispute, disagreement, or matter pertaining to the interpretation of this Agreement . . . , or issues relating to the offer and sale of the franchise . . . to binding arbitration before the American Arbitration Association ("AAA") in Phoenix, Arizona." (Franchise Agreement §16.4, Exhibit A to Defendant's Brief). The defendant requests the Court to dismiss the action for improper venue or transfer it to Arizona to allow plaintiffs' claims to be resolved by arbitration in Arizona, or alternatively to stay the action pending arbitration (*id.* at 9).

## III. ANALYSIS

The Court treats defendant's motion first as a request to compel arbitration. Second, the Court considers it a request by defendant to transfer this case to the District of Arizona so that the arbitration clause can be enforced by the court in the location where the arbitration would be held. This latter action is necessary, states the defendant, because the arbitration provision provides that the arbitration will occur in Arizona. Citing to *Ansari v. Qwest Communications Corp.,* 414 F.3d 1214 (10th Cir. 2005), defendant argues this Court lacks jurisdiction to compel an arbitration in Arizona (Motion at 7-8).

The Court agrees that *Ansari* dictates the result in this case, but perhaps not exactly the way principally requested by defendant. In *Ansari*, the Tenth Circuit

affirmed an order of a district judge in Colorado denying a motion to compel arbitration in Washington, D.C., the situs provided for in the parties' arbitration agreement. The Tenth Circuit construed Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, to mean that "where the parties agreed to arbitrate in a particular forum only a district court in that forum has authority to compel arbitration under § 4." *Id.* at 1219-20. However, in *Ansari* the district court did not transfer the case to the District of Columbia, but rather ordered that any arguments regarding arbitrability be decided there, and stayed the Colorado action pending resolution by the District of Columbia court on the arbitarbility of the claims and the outcome of any arbitration. *Ansari*, 414 F. 3d at 1216. The same result is necessary here, as the situation is virtually identical to *Ansari*.

The Court thus declines to dismiss the plaintiffs' claims at this time, for if they are correct and the arbitration clause is not enforceable, venue over their suit may well lie in Colorado. However, the Court also finds, without preempting any ruling by an Arizona court, that there is at least a good faith basis for defendant asserting that this dispute is subject to arbitration given the express language of the Franchise Agreement. While the Letter Agreement does not contain a separate arbitration clause, it is apparent from the allegations in the complaint that the two documents should be read together. Indeed, plaintiffs' letter demanding rescission collectively refers to the Letter Agreement, Franchise Agreement and Addendum as being subject to the demand for rescission (*see* Exhibit O to Plaintiffs' Response). Under the language of the Franchise Agreement providing for arbitration of any "issues related to the offer and sale of the franchise," the plaintiffs' demand for rescission arguably falls

within that arbitration provision.  The ultimate decision of this issue, however, must be left to an arbitrator or a court in Arizona.

**CONCLUSION**

For the reasons set forth above, defendant's Motion to Dismiss or Alternatively to Stay or Transfer (Dkt. # 6) is GRANTED in part and DENIED in part.  The Court denies the request to dismiss this case and the request to transfer the case to the District of Arizona, but orders that it be stayed pending the bringing by either side of a proceeding in Arizona to compel arbitration in that state.  If neither side commences an arbitration proceeding in Arizona within twenty (20) days from the date of this Order, this case shall be reactivated.

Pursuant to D.C.COLO.LCivR 41.2 the Clerk is directed to administratively close this case subject to reopening for good cause shown upon motion by any party.

DATED: October 10, 2006.

BY THE COURT:

*s/ Phillip S. Figa*
_____
Phillip S. Figa
United States District Judge